**Sylvia Duluc-Silva, Esq.**
*Counsel for Petitioner*
SDS Law
1470 NW 107 Avenue, Suite D
Miami, FL 33172
(305) 239-5123
Sylvia@sds-law.com

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **José Paul Sánchez Barrios**<br><br>                    Petitioner,<br><br>-against-<br><br>**Donald J. Trump**, in his official capacity as President of the United States; **Todd M. Lyons**, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; **Pete R. Flores**, in his official capacity as Acting Commissioner for U.S. Customs and Border Protections; **Kristi Noem**, in her official capacity as Secretary of the United States Department of Homeland Security; **Marco Rubio**, in his official capacity as Secretary of State; **Pamela Bondi**, in her official capacity as U.S. Attorney General; **Garret J. Ripa,** in his official capacity as Field Office Director, Immigration and Customs Enforcement, Enforcement and Removal Operations' Miami Field Office; **Warden of Alligator Alcatraz,** in their official capacity as Warden of the Alligator Alcatraz Detention Facility.<br><br>Respondents. | Case No.:<br>District Judge:<br><br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

**PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**

# INTRODUCTION

1. This Petition for a Writ of Habeas Corpus is respectfully submitted on behalf of José Paul Sánchez Barrios ("Mr. Sánchez" or "Petitioner"). Mr. Sánchez is from Venezuela, though has resided in the United States since on or around October 26, 2021.

2. While in Venezuela, Mr. Sánchez was savagely beaten by the National Intelligence Bolivarian Service ("SEBIN") on account of his political opinion. Mr. Sánchez had held a position as an auditor for the Maracaibo Mayor's Office, where he frequently interacted with local businesses and monitored compliance with their tax obligations. During his tenure, the office eventually became highly politicized under Mayor Willy Casanova, who supported the Venezuelan United Socialist Party ("PSUV"), and tensions rose because of Mr. Sánchez's opposition to that regime.

3. Mayor Willy Casanova eventually implemented unlawful policies and ordered Mr. Sanchez and his colleagues in the Audit Department to impose extortive fees on local businesses. Mr. Sánchez refused to comply with these demands. Within a week, he was reprimanded by his superiors for failing to meet 'quotas.' His superiors told him that he must pressure local businesses and close those that refuse to collaborate. Mr. Sánchez tendered his resignation after that interaction. Soon thereafter, Mr. Sánchez was violently beaten by SEBIN police troops outside of his home in front of his wife and children, ostensibly for his opposition to the political regime and refusal to comply as an Auditor. His wife was pushed to the ground during that interaction, leading to injuries. Fearing for their safety, Mr. Sánchez and his family fled Venezuela for the United States.

4. Mr. Sánchez and his family entered the United States on or around October 26, 2021, whereupon they immediately presented themselves to immigration authorities. The family

was provided with a Notice to Appear ("NTA") in immigration court, though this notice was never filed with any court, nor did it specify a time or place to appear. The family was briefly detained for two days before being released on their own recognizance. As of this filing, Mr. Sánchez has not been served with a new NTA, and immigration court records indicate that he is not currently, nor ever has been, in removal proceedings.

5. Mr. Sánchez and his family were later able to file their Form I-589 Application for Asylum before United States Citizenship and Immigration Services ("USCIS" or "the Agency"), on or around October 25, 2022. That application is still pending, and Mr. Sánchez is still awaiting his asylum interview before the Agency.

6. Mr. Sánchez obtained Employment Authorization Documents on or around September 21, 2023. These documents expired on or around September 20, 2025, though an application for renewal has recently been filed by Mr. Sánchez's wife. Mr. Sánchez and his family were also able to obtain Temporary Protected Status ("TPS") in 2023, prior to its recent revocation on or around November 7, 2025.

7. Mr. Sánchez is the primary caregiver for his father, who lives in the United States and is currently undergoing chemotherapy and radiotherapy. He was detained by Immigration and Customs Enforcement ("ICE") on or around January 14, 2026, while driving home after dropping his father off at the Florida Cancer Center for a pre-scheduled appointment.

8. Mr. Sánchez and his wife have three children here in the United States. Their baby, J.V.S., was born on September 19, 2025, and is a U.S. Citizen. Mr. Sánchez is a father and caregiver for J.V.S. His wife also has a lumbar prosthesis due to scoliosis. Her prothesis was damaged in Venezuela during the family's interaction with SEBIN troops. When she was pushed, three of the screws in her prothesis broke.

9. Mr. Sánchez has never been convicted of a crime, rendering his sudden arrest and subsequent detention as having occurred without any legitimate or material change in circumstances that might rationally justify his loss of personal liberty.

10. Mr. Sánchez's detention occurred in a complete absence of process. He and his family have a pending Form I-589, Application for Asylum before USCIS. They are still awaiting their interview with the Agency. Mr. Sánchez has not received a valid NTA and is not even in removal proceedings. The Government has no legitimate interest in his civil detention, as he has no criminal history, and there can be no perceived risk of flight in the absence of proceedings that might flee from.

11. The Department of Homeland Security ("the Department" or "DHS"), through the Board of Immigration Appeals ("the Board" or "BIA"), has abruptly and unlawfully reversed decades of settled statutory interpretation and immigration practice in order to deny immigration bond hearings to potentially millions of people nationwide situated like Mr. Sánchez.

12. The Board's recent decision in *Matter of Yajure Hurtado* posits a novel re-interpretation of the statutory framework of the Immigration and Nationality Act ("INA"), which strips immigration courts of the jurisdictional authority to hear custody redetermination for detained noncitizens who entered the United States without inspection. As a result, any individualized review of Mr. Sánchez's custody has become unobtainable through the typical administrative channels.

13. This matter thus arises from the Government's failure to articulate a clear or lawful basis for Mr. Sánchez's detention, sans determination by either the Department or any court relative to perceived danger to the community or flight risk that he might otherwise present.

3

Mr. Sánchez's detention without a bond hearing is unlawful, a violation of the pertinent statutory regulations, and a violation of his right to due process under the Fifth Amendment to the United States Constitution.

## JURISDICTION

14. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

15. Petitioner is in the physical custody of Respondents and is detained at the South Florida Detention Facility, colloquially known as "Alligator Alcatraz."

16. This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

17. Habeas relief is available when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Any vindication of Mr. Sánchez's statutory, constitutional, or regulatory rights can and must come from this Court through writ of habeas corpus.

18. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All-Writs Act, 28 U.S.C. § 1651.

## VENUE

12. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

13. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the Southern District of Florida, the judicial district in which Petitioner currently is detained.

14. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e), because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Florida.

**REQUIREMENTS OF 28 U.S.C. § 2243**

15. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

16. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

17. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noi*a, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

**PARTIES**

18. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

19. Mr. Sánchez is a Venezuelan national and resident of Florida. He is currently detained at the South Florida Detention Facility, colloquially known as "Alligator Alcatraz." He is in custody and under the direct control of Respondents and their agents.

5

20. Respondent Donald J. Trump is named in his official capacity as the President of the United States. In this capacity, he is responsible for the policies and actions of the executive branch, including the Department of Homeland Security. Respondent Trump's address is the White House, 1600 Pennsylvania Ave. NW, Washington D.C. 20500.

21. Respondent Kristi Noem is named in her official capacity as the Secretary of the Department of Homeland Security. In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act and oversees U.S. Immigration and Customs Enforcement ("ICE") the component agency responsible for Petitioner's detention. Respondent Noem is a legal custodian of Petitioner. Respondent Noem's address is 2801 Nebraska Avenue N.W., Washington, D.C. 20528.

22. Respondent Pamela Bondi is named in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice ("DOJ"). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the BIA. Respondent Bondi is a legal custodian of Petitioner. Respondent Bondi's address is 950 Pennsylvania Avenue N.W., Washington, D.C. 20530.

23. Respondent Todd M. Lyons is named in his official capacity as the acting director of ICE. He administers and enforces the immigration laws of the United States, routinely conducts business in the Southern District of Florida, is legally responsible for pursuing efforts to remove Petitioner, and as such is the custodian of Petitioner. Respondent Lyon's address is ICE, Office of the Principal Legal Advisor, 500 12th St. SW, Mail Stop 5900, Washington D.C. 20536-5900.

24. Respondent Pete R. Flores is named in his official capacity as the acting commissioner of Customs and Border Protection ("CBP"). In this capacity, Respondent Flores leads CBP employees who are responsible for the administration of immigration laws and the execution of detention and removal determinations within its area of authority. Respondent Flores' address is 1300 Pennsylvania Ave. NW, Washington D.C. 20229.

25. Respondent Garrett J. Ripa is named in his official capacity as the Field Office Director, Immigration and Customs Enforcement, Enforcement and Removal Operations' Miami Field Office. Respondent is a legal custodian of Petitioner and has the authority to release him. Respondent Ripa's address is 2805 SW 145th Avenue, Miramar, FL 33027.

26. Respondent Warden of Alligator Alcatraz is named in their official capacity as Warden of the Alligator Alcatraz Detention Facility. Respondent is the immediate custodian of Petitioner. Respondent's address is Ochopee, FL 34141.

## STATEMENT OF FACTS

27. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

28. Mr. Sánchez fled Venezuela after experiencing political persecution. He sought the safety of the United States, entering in or around October 26, 2021, whence he and his family presented themselves to and were briefly detained by immigration authorities before being released on their own recognizance.

29. Mr. Sánchez filed a Form I-589, Application for Asylum and Withholding of Removal on or around October 25, 2022, with USCIS. He and his family are still awaiting their asylum interview with the Agency and are not currently in removal proceedings.

30. Mr. Sánchez was detained on or around January 14, 2026, as the result of a traffic stop on his way home from dropping his father off at the Florida Cancer Center. His arrest and subsequent detention by ICE therefore occurred without any legitimate or material change in circumstances that might rationally justify his loss of personal liberty.

31. Mr. Sánchez cannot be subject to mandatory detention under 8 U.S.C. § 1225(b)(1), including because Petitioner does not meet the criteria for Expedited Removal. *See Make the Road New York v. Noem*, No. 25-190, 2025 WL 2494908, at *23 (D.D.C. Aug. 29, 2025).

32. Mr. Sánchez cannot be subject to mandatory detention under 8 U.S.C. § 1225(b)(2), including because, as a person already present in the United States, Petitioner is not currently "seeking admission" to the United States. *See Puga v. Assistant Field Off. Dir.*, No. 25-24535-CIV-ALTONAGA, 2025 LX 462379, at *9-13 (S.D. Fla, 2025) (rejecting the argument that mandatory detention under Section 1225(b)(2)(A) applies to all noncitizens present in the United States who have not been admitted); *see also Gomez-Pena v. Sec'y, Dep't of Homeland Sec.*, 2026 U.S. Dist. LEXIS 4760, 2026 WL 83980, at *11-13 ( M.D. Fla, Jan. 12, 2026) (finding "that § 1225 does not apply to aliens who have been in the United States for long periods"); *see also Gonzalez v. Sterling*, 2025 LX 501591, 2025 WL 3145764, at *13-15 (N.D. Ga. 2025) (holding that a petitioner who has lived in the country since 2013 cannot be considered "seeking admission"); *see also Merino v. Ripa*, No. 25-23845-CIV-MARTINEZ, 2025 LX 451385 (S.D. Fla. 2025) (finding that "the plain reading of the statutes supports a finding that Petitioner, who has resided in the country for nearly a decade and was apprehended while already within the United States, not at the border, falls under § 1226(a), not § 1225(b)(2), and is therefore subject to

discretionary bond determination"); *see also Aguiriano Romero v. Hyde*, No. 25-11631, 2025 WL 2403827, at *1, 8-13 (D. Mass. Aug. 19, 2025) (Murphy, J.); *see also Lopez v. Trump*, 2025 LX 545829, 2025 WL 3264151, at *9 (D. Vt. 2025) ("Someone like [Petitioner] who has already entered the United States and resided here for more than three years cannot reasonably be said to be both an "applicant for admission" (which she is) as well as a person still "seeking admission" (which she is not)").

33. Mr. Sánchez is not lawfully subject to mandatory detention under 8 U.S.C. § 1226(c), including because he has not been convicted of any crime that triggers such detention. *See Demore v. Kim*, 538 U.S. 510, 513-14, 531 (2003) (allowing mandatory detention under § 1226(c) for brief detention of persons convicted of certain crimes and who concede removability).

34. Accordingly, Mr. Sánchez is subject to detention, if at all, under 8 U.S.C. § 1226(a).

35. Mr. Sánchez is *prima facie* eligible for a grant of release, as he has no criminal history and maintains strong community ties in Florida, where he has continuously resided since 2021. Mr. Sánchez has formed meaningful and supportive relationships and has a nearly 5-month-old U.S. Citizen child who relies on him. His father, who also resides in Florida and is battling cancer, similarly relies on his care. Mr. Sánchez has held valid employment authorization with U.S. Citizen and Immigration Services ("USCIS") since 2023. Such authorization expired in September of 2025, though an application for its renewal was filed in January of this year.

36. As a person detained under 8 U.S.C. § 1226(a), Petitioner must, upon their request, receive a custody redetermination hearing (colloquially called a "bond hearing") with strong procedural protections. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021)

37. Mr. Sánchez requests either immediate release, a federal bail hearing, or, in the alternative, a bond hearing in immigration court under the discretionary framework of § 1226(a).

## LEGAL FRAMEWORK

38. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

39. Based solely on the allegation that Mr. Sánchez entered the United States without being inspected and admitted, the Department denies him individualized review of his immigration custody, consistent with a new DHS policy issued on July 8, 2025, instructing all ICE employees to consider anyone inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) – i.e., those who entered the United States without admission or inspection – to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

40. Echoing the aforementioned sentiment, on September 5, 2025, the Board of Immigration Appeals issued a precedential decision, holding that an immigration judge has no authority to consider bond requests for any person who entered the United States without admission. *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). This decision requires the Immigration Court to deny a bond hearing to all persons such as Petitioner.

41. The responsible administrative agency has therefore predetermined that Petitioner will be denied a bond hearing.

42. Petitioner's detention on this basis violates the plain language of the INA. Section 1225(b)(2)(A) does not apply to individuals, like Petitioner, who previously entered and are now residing in the United States. Instead, such individuals are subject to a different statute, § 1226(a), which allows for the discretionary release on conditional parole or bond. That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection.

43. Petitioner cannot be subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The overwhelming majority of courts across the country, including those in the Eleventh Circuit, have held that Section 1226(a), rather than Section 1225(b)(2), governs the civil detention of a noncitizen, who has resided in the United States for years. *See Puga v. Assistant Field Off. Dir.*, No. 25-24535-CIV-ALTONAGA, 2025 LX 462379, at *9-13 (S.D. Fla, 2025) (rejecting the argument that mandatory detention under Section 1225(b)(2)(A) applies to all noncitizens present in the United States who have not been admitted); *see also Gomez-Pena v. Sec'y, Dep't of Homeland Sec.*, 2026 U.S. Dist. LEXIS 4760, 2026 WL 83980, at *11-13 ( M.D. Fla, Jan. 12, 2026) (finding "that § 1225 does not apply to aliens who have been in the United States for long periods"); *see also Merino v. Ripa*, No. 25-23845-CIV-MARTINEZ, 2025 LX 451385 (S.D. Fla. 2025) (finding that "the plain reading of the statutes supports a finding that Petitioner, who has resided in the country for nearly a decade and was apprehended while already within the United States, not at the border, falls under § 1226(a), not § 1225(b)(2), and is therefore subject to discretionary bond determination"); s*ee also Gonzalez v. Sterling*, 2025 LX 501591, 2025 WL 3145764, at *13-15 (N.D. Ga. 2025) (holding that a petitioner who has lived in the country since 2013 cannot be considered "seeking admission").

44. Petitioner is being irreparably harmed by his ongoing unlawful detention without a bond hearing.

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of Fifth Amendment Right to Due Process
### (Failure to Provide an Individualized Hearing for Domestic Civil Detention).

45. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

46. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

47. This fundamental principle of our free society is enshrined in the Fifth Amendment's Due Process Clause, which specifically forbids the Government to "deprive[] any person … of … liberty … without due process of law." U.S. Const. Amend. V.

48. "Freedom from imprisonment – from Government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

49. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Id*. at 693; *see Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[Noncitizens] who have once passed through our gates, even illegally, may be expelled only after proceedings confirming to traditional standards of fairness encompassed in due process of law"); *cf. Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020) (holding noncitizens due process rights were limited where the person was not residing in the United States, but rather had been arrested 25 yards into U.S. territory, apparently moments after he crossed the border, while he was still "on the threshold").

12

50. "Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 690.

51. The Supreme Court has thus "repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," including an individualized detention hearing. *Addington v. Texas*, 441 U.S. 418, 425 (1979) (collecting cases); *see also Salerno*, 481 U.S. at 755 (requiring individualized hearing and strong procedural protections for detention of people charged with federal crimes); *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992) (same for civil commitment for mental illness); *Kansas v. Hendricks*, 521 U.S. 346, 357 (1997) (same for commitment of sex offenders).

52. Mr. Sánchez was arrested inside the United States, after living here for nearly 15 years, and is being detained without being provided any individualized detention hearing.

53. Mr. Sánchez's continued detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

## COUNT TWO
### Violation of 8 U.S.C. § 1226(a) and Associated Regulations.

54. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

55. Mr. Sánchez may be detained, if at all, pursuant to 8 U.S.C. § 1226(a).

56. Under § 1226(a) and its associated regulations, Mr. Sánchez is entitled to a bond hearing. *See* 8 C.F.R. § 236.1(d); 8 C.F.R. § 1003.19(a)-(f).

57. Mr. Sánchez has not been provided with a bond hearing as required by law.

## COUNT THREE

**Violation of Fifth Amendment Right to Due Process**
**(Failure to Provide Bond Hearing Under 8 U.S.C. § 1226(a)).**

58. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

59. Because Mr. Sánchez is a person arrested inside the United States and is subject to detention, if at all, under 8 U.S.C. § 1226(a), the Due Process Clause of the Fifth Amendment to the United States Constitution requires that he receives a bond hearing with strong procedural protections. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property");

60. Mr. Sánchez has not been provided with a bond hearing as required by law and will be unable to obtain one due to the Board's recent decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

61. Mr. Sánchez's continued detention, sans opportunity for individualized review, is unlawful and violative of his constitutionally protected rights.

**COUNT FOUR**
**Violation of Fifth Amendment Right to Due Process**
**(Substantive Due Process)**

62. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

63. Because Mr. Sánchez is not being provided a bond hearing, the Government is not taking any steps to effectuate its substantive obligation to ensure that immigration detention bears a "reasonable relation" to the purposes of immigration detention (*i.e.*, the prevention of flight and danger to the community during the pendency of removal proceedings) and is not impermissibly punitive. *See Zadvydas*, 533 U.S. at 690; *Demore v. Kim*, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring).

64. Mr. Sánchez's detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

**COUNT FIVE**
**Violation of Fifth Amendment Right to Due Process**
**(Unlawful Punishment; Freedom From Cruel Treatment and Conditions of Confinement)**

65. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

66. The Eleventh Circuit has held that pretrial detention can amount to punishment in the constitutional sense where a restriction on one's liberty is "not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court may infer that the purpose of the government action is punishment." *Lynch v. Baxley*, 744 F.2d 1452, 1463 (11th Cir. 1984) (citing *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)). Where the Government cannot or will not justify civil detention pursuant to legitimate governmental interests, such detention is inherently arbitrary.

67. "[I]f pretrial detainees cannot be punished because they have not yet been convicted, then [civil detainees] cannot be subjected to conditions of confinement substantially worse than they would face upon commitment." *Lynch v. Baxley*, 744 F.2d 1452, 1461 (11th Cir. 1984)). "Or, to put it more colorfully, purgatory cannot be worse than hell." *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004).

68. The Fifth Amendment guarantees that civil detainees, including all immigrant detainees, may not be subject to punishment. The Government violates this substantive due process right when it subjects civil detainees to treatment and conditions of confinement that amount to punishment or does not ensure the detainees' safety and health.

69. Respondents have violated Petitioner's Fifth Amendment substantive due process rights by subjecting him to conditions of confinement that amount to punishment.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Sánchez respectfully requests that this Court grant the following:

(1) Assume jurisdiction over this matter;

(2) Order that Petitioner shall not be transferred outside the Southern District of Florida pending resolution of this Petition.

(3) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

(4) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately on conditions this Court deems just and proper, or in the alternative to exercise its inherent authority to hold its own bail hearing on the question of custody, or in the alternative to order that Petitioner receive a bond hearing with strong procedural protections before an immigration court, pursuant to 8 U.S.C. § 1226(a) within seven days;

(5) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. 2412, and on any other basis justified under law; and

(6) Grant any further relief that this Court deems just and proper.

Respectfully submitted on this 12th day of February, 2026.

/s/ Sylvia Duluc-Silva
**Sylvia Duluc-Silva, Esq.**
*Counsel for Petitioner*
1470 NW 107 Ave.
Suite D
Miami, FL 33172
(786) 253-9554
Sylvia@sds-law.com

17

## **CERTIFICATE OF SERVICE**

I, Sylvia Duluc-Silva, hereby certify that on February 12, 2026, I caused a copy of the foregoing PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS to be served on Respondents through the use of the CM/ECF system, which will send notifications to all counsel of record.

/s/ Sylvia Duluc-Silva
**Sylvia Duluc-Silva, Esq.**